552

## GAILLARD v. BOYNTON.
### No. 2881.

Circuit Court of Appeals, First Circuit.
April 17, 1934.

John E. Tobin (of Devine & Tobin), of Manchester, N. H., for appellant.

Ora W. Craig, of Concord, N. H. (John M. Stark, of Concord, N. H., on the brief), for appellee.

Before WILSON and MORTON, Circuit Judges, and LETTS, District Judge.

LETTS, District Judge.

This is an appeal from the District Court of New Hampshire predicated upon alleged errors of the trial court in respect to the admission of testimony, his refusal to grant certain requests to charge and the language used in a portion of the charge to the jury stating the elements of damages for which the plaintiff would be entitled to recover, if at all.

The action was brought to recover damages for personal injuries suffered by the plaintiff, appellee, a married woman, fifty-four years of age.

The plaintiff, a short distance from her home, was walking along the edge of a macadam surfaced highway eighteen feet in width. The view of the roadway at this point was unobstructed for a distance of several hundred feet. She testified that she paused, looked back over her shoulder, saw no cars coming, and then proceeded to cross to the other side of the roadway, walking slowly and taking a diagonal course. She had proceeded about eighteen feet when she was struck by the defendant's automobile and remembers nothing further.

The driver of defendant's car testified that he observed Mrs. Boynton when he was

three to four hundred feet from her. It was a cold, windy day and the plaintiff, as she proceeded, was bending forward holding her hat on her head. Mr. Mallard, the driver, confirms the plaintiff's statement that she was walking slowly but testified that he was within about twenty feet from her when she changed her course and started to cross the road. He endeavored to check the speed of his car and swerved or turned to the left of the roadway, with the result that plaintiff and the right side of the car came in contact, causing injuries to the plaintiff of such a character that she is now an invalid and in the opinion of a medical expert will never be better.

Mr. Boynton, plaintiff's husband, testified that in conversation with the driver of the car at the scene of the accident he asked Mallard how it happened and that the latter replied: "Well, I did not see her. She jumped right in front of my car."

The plaintiff prior to the accident was in excellent health and, in addition to performing her usual household duties, helped her husband work the farm, he testifying that she was accustomed to milk the cows, make butter, cut wood, and work in the fields. He described her as being "as good as a hired man." There was no evidence of any independent or outside employment. The jury awarded the plaintiff $6,000. The issues here raised relate only to the rulings of the court and his charge to the jury in the course of the trial.

■■ The first exception relates to the admission of testimony of one Clyde Smith who was an employee of plaintiff's counsel. He went to the scene of the accident with Mr. Boynton on the day of its occurrence; observed certain blood marks upon the highway which were pointed out to him and made some measurements. About two weeks later, after Mrs. Boynton's return from the hospital to her home, she accompanied Smith to the scene of the accident, pointing out where she started to cross the road and where she was struck. The distance between these designated points he measured, and timed on that occasion Mrs. Boynton while she walked from one point to the other. Evidence was offered that on this occasion she walked slowly and at the same pace as on the occasion when she was injured. The time required by the plaintiff to walk the distance of eighteen feet and six inches, as recorded by witness Smith, was fourteen seconds.

The defendant objected to the admission of this testimony but without, at the time,

stating any specific ground of objection. It is now contended that the testimony was improper as representing a reconstruction of the accident, out of court, based upon statements of the plaintiff. The trial court, at the time of admitting the testimony, ruled that the witness was only testifying to what he did and to measurements based on points shown to him by another witness. The trial court also said in conjunction with the rulings admitting the evidence:

"Now I will say to the jury that as substantive evidence it is only what this man did and the measurements that he took. As to whether or not these points are of any interest to the jury must depend upon the testimony of the witness who preceded him."

And at the conclusion of this portion of the testimony the trial court again stated to the jury:

"Now whether these experiments are of any use must depend upon whether or not the point is substantiated by other testimony in the case."

Afterwards the trial court made it clear to the jury that the measurements taken by witness Smith, in relation to points which the plaintiff had pointed out to him on that occasion, were of no consequence unless the other testimony which had been presented in the case had established those points and measurements as relevant. The timing of the plaintiff's walk between the designated points was likewise dependent upon supporting testimony, to the effect that she traversed the distance at substantially the same pace as on the day and occasion of the accident.

The admissibility of evidence of this character is to a substantial degree within the discretion of the trial court, and his decision, except in cases of palpable abuse clearly resulting in prejudice, will not be reviewed by an appellate court. The very basis of the ruling involves a determination of fact, that is, will the evidence aid the jury? Konold v. Rio Grande W. Ry. Co., 21 Utah, 379, 400, 60 P. 1021, 81 Am. St. Rep. 693; Whitcher v. Boston & M. R. Co., 70 N. H. 242, 46 A. 740; Healey v. Bartlett, 73 N. H. 110, 59 A. 617, 6 Ann. Cas. 413; Field v. Gowdy, 199 Mass. 568, 85 N. E. 884, 19 L. R. A. (N. S.) 236.

Appellant's first assignment of error must be overruled.

■ Defendant's second assignment of error is based upon an exception interposed to a remark made to the jury by plaintiff's counsel during his argument. The statement objected to was as follows:

"Now, gentlemen, I shall contend that Mrs. Boynton was not out there running an automobile that we all know may be inherently dangerous to life and limb."

The point is stressed in defendant's brief that it has been judicially held that an automobile is not an inherently dangerous instrument and that, therefore, the failure of the trial court to take any action at the time this remark was made to the jury resulted in prejudice to the defendant and was, therefore, a reversible error. With this contention we do not agree.

The question here presented does not at all involve the issue or legal consequences of the custody or use of an inherently dangerous instrument. The trial court in his charge made it clear to the jury that the action was one based upon ordinary negligence and properly stated the law in regard to the burden resting upon the plaintiff of proving defendant's negligence. There is no basis to be found in the record to assume that the jury was improperly influenced by this statement. It amounted to no more than an argument that an automobile, because of its weight and speed, may, if improperly operated, become a hazard to human life. At all times it was clear to the jury that they were to consider the management or operation of defendant's automobile, in other words, the conduct of persons. The exception is without merit and the statement was properly disregarded by the trial court.

Assignments of error Nos. 3, 4, and 5 will be reviewed together. At the conclusion of the court's charge to the jury counsel for the defendant took exception to the refusal of the court to grant certain requests to instruct, which were designated as requests Nos. 2, 3, and 4. These requests were as follows:

"2. If the defendant's driver, when he saw Mrs. Boynton suddenly start across the road toward the east, should not have turned his car toward his left this is not necessarily negligence. It might be a mere mistake in judgment for which the defendant would not be responsible.

"When a person is suddenly called upon to act in an emergency, this fact must be taken into consideration in determining the quality of his act. The excitement incident to such a situation naturally affects the judgment of a prudent man and has a tendency to prevent it from doing its best work. The defendant's driver is held only to the conduct of the ordinary prudent man acting under similar circumstances."

"3. The fact that defendant's driver may have been to the left of the center line of the highway when the accident happened is not in and of itself evidence of negligence."

"4. Negligent inattention on the part of Mrs. Boynton while crossing the road will bar her recovery and the fact that she had nothing to control except her own locomotion is a material factor to be taken into consideration in determining her conduct."

At the time the granting of these requests was refused the court had already instructed the jury in regard to what character of conduct constitutes negligence. He had instructed them in regard to the plaintiff's burden of establishing the defendant's negligence by a fair preponderance of the evidence and had instructed them in regard to the consequences of contributory negligence on the part of the plaintiff and rightly informed them that the burden of establishing contributory negligence, as a defense, was a burden to be borne by the defendant and, in addition, succinctly dealt with the substance of defendant's request No. 2 in the following manner:

"It sometimes happens that a person is suddenly called upon to act in an emergency. If the emergency is not brought about by his previous careless conduct, then the fact that he has to act in an emergency should be taken into consideration in determining the quality of his act. He may not always do the best thing considered from the viewpoint of subsequent events, but if he acts as an ordinary prudent man might have acted under similar circumstances, then he should not be found guilty of negligence."

Where a charge as given is fair and presents fully to the jury the issues in the cause, the denial of requests involving unnecessary and further particularization is not error. We think the trial court's charge did in this case, on the matter of defendant's liability, fairly and with reasonable fullness place before the jury the issues upon which they were to pass. When such is the case, it is not the desire of this court to give unnecessary encouragement to the practice of insisting that the trial court at the conclusion of an adequate charge read, or orally state, to the jury a series of detached and unco-ordinated specific instructions. Such a practice is more likely to confuse than to assist the jury in their deliberations.

In the case of McGarry v. Healey, 78 Conn. 365, 62 A. 671, 672, the court said:

" * * * The failure of the court to comply with each of these requests is assigned as error. It was the duty of the court to state to the jury the issues which were pre-

sented for its determination upon the evidence and such principles of law as might be necessary for their proper determination upon the facts as they should be found to exist and to make this statement in as simple, orderly, clear, and precise a manner as it reasonably could under the circumstances. ❊ * * An examination of the charge discloses that this duty was performed; nor was any subject involved in the requests omitted. The court was under no duty to notice the requests specifically, and the instructions given are to be commended, in that they were in the language of the court, and framed in an orderly manner and judicial spirit, and avoided what we have recently had frequent occasion to condemn as an unsatisfactory and dangerous practice. * * *"

In the case of Doyle v. Doyle, 257 Ill. 229, 237, 100 N. E. 950, 953, the court said:

"Appellant also complains that the court refused to give several instructions at his request. The given instructions in the case fully advise the jury as to the law applicable to the issues being tried. In so far as the refused instructions were proper, they were sufficiently embodied in other instructions given. It would serve no useful purpose to extend this opinion by discussing these instructions in detail. We are satisfied that substantial justice has been done, and that no error has intervened which requires us to reverse this decree."

See, also, Walker v. Railroad, 71 N. H. 271, 273, 51 A. 918; Richmond v. Bethlehem, 79 N. H. 78, 80, 104 A. 773.

We fail to find in appellant's assignments of error Nos. 3, 4, and 5 any substance or merit which would justify the granting of a new trial.

The remaining assignment of error is related to the following exception interposed by counsel for the defendant at the conclusion of the court's charge:

"The defendant also excepts to that portion of the charge in which the court stated the jury might consider as an element of damage the loss of time and loss of earning capacity of the plaintiff."

The language employed by the trial court to which this exception obviously refers appears in that portion of the charge dealing with the rule of damages. The court instructed the jury in part as follows:

" * * * If the plaintiff is entitled to recover, she is entitled to compensation for all pain and suffering in the past and future, if you find she will continue to suffer pain in the future as a result of the accident. *She is entitled to loss of time while trying to effect a cure. She is entitled to loss of earning capacity, both past and future, if you should find that she will continue to be disabled in the future. Fair and just compensation is the rule; that and nothing more.*" (Italics supplied.)

Chapter 288 of the Public Laws of New Hampshire, 1926, provides in part as follows:

"Every married woman shall have the same rights and remedies, and shall be subject to the same liabilities in relation to property held by her in her own right, as if she were unmarried, and may make contracts, and sue and be sued, in all matters in law and equity, and upon any contract by her made, or for any wrong by her done, as if she were unmarried. * * *" Section 2.

Some of the problems raised by married women's enabling acts have become well settled; others appear now in process of review and resettlement in several of the American jurisdictions. Under these statutes, there is authority in several jurisdictions that a married woman, although unemployed apart from her household and family labors, may recover in connection with tortious injuries to herself for any impairment of earning capacity or ability to do.

In the case of Koch v. Lynch (1924) 247 Mass. 459, 462, 141 N. E. 677, the court said:

"These are actions of tort to recover compensation arising from the striking of the female plaintiff by an automobile owned and operated by the defendant. She seeks compensation for personal injuries. Her husband seeks compensation for expenses incurred in treatment of her injuries and other consequential damages. The exceptions state that there was evidence of due care on the part of the female plaintiff.

"The married woman plaintiff could recover for impairment of her capacity to labor without proof that she actually was working or in the receipt of wages or compensation at the time of and before the injury. Harmon v. Old Colony Railroad, 165 Mass. 100, 42 N. E. 505, 30 L. R. A. 658, 52 Am. St. Rep. 499; Millmore v. Boston Elevated Railway Co., 198 Mass. 370, 84 N. E. 468."

See, also, Chicago & M. Elec. R. Co. v. Krempel, 103 Ill. App. 1; Powell v. Augusta & S. R. Co., 77 Ga. 192, 200, 3 S. E. 757, 759; Colorado Springs & I. R. Co. v. Nichols, 41 Colo. 272, 92 P. 691, 20 L. R. A. (N. S.) 215; Atlanta Street R. Co. v. Jacobs, 88 Ga. 647, 15 S. E. 825.

In some of these jurisdictions the hus-

band is still permitted to maintain an action for consortium, including loss of services of the wife. In these jurisdictions the right of the wife to recover for impaired earning capacity, where there is no independent or outside employment, neither involves nor permits the consideration of the time element, past or future. It is limited to a recovery for the injury to her faculties and capabilities to do.

In Massachusetts, however, which seems also now to be accepted by the Connecticut courts, a different rule has been developed. There, under a seemingly more liberal interpretation of the emancipation statutes, the extent of the wife's recovery is determined by substantially the same considerations, and inclusive of the same elements of damages, as if she were a man. The consequences of the marital relationship are virtually excluded. The husband is left with no right of action for the tortious injuries to his wife other than to recover for actual expenses to which he has been put as a result of the injury for her maintenance and cure in consequence of his obligation to support under the marriage contract.

Compare Kelley v. N. Y., N. H. & H. R. R., 168 Mass. 308, 46 N. E. 1063, 38 L. R. A. 631, 60 Am. St. Rep. 397, and Harmon v. Old Colony R. Co., 165 Mass. 100, 42 N. E. 505, 30 L. R. A. 658, 52 Am. St. Rep. 499, with Feneff v. N. Y. C. & H. R. R., 203 Mass. 278, 89 N. E. 436, 437, 24 L. R. A. (N. S.) 1024, 133 Am. St. Rep. 291, and Cassidy v. Constantine (1929) 269 Mass. 56, 168 N. E. 169, 66 A. L. R. 1186.

It is clear from an analysis of these cases that in Massachusetts since 1909 when the Feneff Case was decided the services, wifely, motherly, and economic, which a woman gives to her husband and family, are not a legal duty. They represent a legal right. The home and family are hers as well as her husband's. For the impairment of the capacity voluntarily to exercise that right she, and she alone, is entitled to recover damages. In the Feneff Case, supra, the court said:

"* * * When the injury is to the person of another, the impairment of ability to work and be helpful and render services of any kind is paid for in full to the person injured. * * * It is enough for the present case that persons whose relations to the injured party are purely domestic should not be permitted to share the compensation to which he is entitled for the impairment of his powers by the tort of another person, nor to receive an additional sum beyond the full compensation to which the injured person is entitled. Their damages are too remote to be made the subject of an action. * * *

"We are of opinion that in this class of cases there should be no recovery for loss of consortium, when the impairment of the powers and faculties of the plaintiff's spouse has been fully paid for in money. Indirectly, the plaintiff in such a case reasonably may be expected, through the same marital relation which gives a right of consortium, to be somewhat benefited by such a payment."

In Cassidy v. Constantine, supra, the court said at page 58 of 269 Mass., 168 N. E. 169, 66 A. L. R. 1186:

"* * * 'A married woman may sue * * * in the same manner as if she were sole; but this section shall not authorize suits between husband and wife.' G. L. c. 209, § 6. * * * These words in this context interpreted in the light of the preexisting law and the mischief intended to be remedied can hardly be given a narrow meaning. They mean that in the main she stands in the courts on the same footing as other litigants. *The obligation of the husband to support her is for her advantage and not to her detriment.* To sue 'in the same manner' as if she were sole according to the common and approved usage of the language means that, if entitled to recover, her damages are to be measured by the same standard as those of other litigants. *We think that these words refer both to the extent of rights to be established and to the mode of ascertaining and declaring those rights.* Natick Gas Light Co. v. Inhabitants of Natick, 175 Mass. 246, 248 [56 N. E. 292]." (Italics supplied.)

Under the Massachusetts rule there would appear to be no prejudicial error, even in the case of a married woman with no employment outside the family, to permit the jury to include in their consideration of damages the loss of time while trying to effect a cure as well as the time element, past and future, in connection with any impairment of earning capacity or ability to do. The Massachusetts rule is probably also the rule in Connecticut.

See Marri v. Railway, 84 Conn. 9, 78 A. 582, 33 L. R. A. (N. S.) 1042, Ann. Cas. 1912B, 1120.

The jurisdictions following the Massachusetts rule regard the effect of the statutes as terminating or superseding the common law rule from which the husband derived his right of action. The wife is permitted to recover for virtually all elements of damage consequent upon her injury, and all difficulties in regard to the possibility of double recovery by husband and wife for essentially

the same elements of damage are eliminated. The rule has the merit of simplicity and gives full recognition to the independent status of the wife. We, however, are bound in the instant case by the interpretation and effect of the New Hampshire statute, as applied by the courts of that state in relation to the rights of both husband and wife. In only one case has the New Hampshire court dealt in extenso with the points here involved; but in that case the older rule is emphatically reasserted, although consideration seems to have been given to the altered view in Massachusetts and Connecticut. This case, Guevin v. Railway (1916) 78 N. H. 289, 99 A. 298, 300, L. R. A. 1917C, 410, dealt with an action for negligence resulting in loss of the services and society of plaintiff's wife. In this case the court said:

"It is also urged that a nonsuit should have been ordered upon the ground that the husband has now no action for the loss of consortium caused by injuries negligently inflicted upon his wife. It was held otherwise in Booth v. Railway, 73 N. H. 529, 63 A. 578; but in view of the facts that one of the authorities then cited by the court (Kelley v. Railroad, 168 Mass. 308, 46 N. E. 1063, 38 L. R. A. 631, 60 Am. St. Rep. 397) has since been overruled (Feneff v. Railroad, 203 Mass. 278, 89 N. E. 436, 24 L. R. A. (N. S.) 1024, 133 Am. St. Rep. 291; Bolger v. Railway, 205 Mass. 420, 91 N. E. 389; Whitcomb v. Railroad, 215 Mass. 440, 102 N. E. 663), and that the Connecticut court has followed these later cases (Marri v. Railway, 84 Conn. 9, 78 A. 582, 33 L. R. A. (N. S.) 1042, Ann. Cas. 1912B, 1120), the subject has been re-examined. * * *

"The same general rule was long ago applied in this state in an action for negligence. 'The damages to her husband, from the loss of her services and society, and the expenses of her cure, follow uniformly and by legal necessity from the relation of husband and wife, which entitles him to her services and society, and charges him with her support.' Hopkins v. Railroad, 36 N. H. 9, 14, 72 Am. Dec. 287. * * *

"But if loss of service is essential the cause of action has not been destroyed since some right to services still remains in the husband. As to this it is urged that the husband's right is not now entitled to protection in this class of cases because the right is merely one to receive services voluntarily rendered, that the wife is not now obliged to work for him; and as he cannot demand her services, neither should he be allowed to complain of being deprived of them. But he had

no higher right at common law. While the books abound in statements that the wife's services are the husband's, and that it is her duty to render them to him, he had no legal remedy if she chose to refuse performance of that duty. His legal right as against her was to such service as she chose to perform for him and to the proceeds of such service as she chose to perform for others. This right was based entirely upon an unenforceable obligation upon her part. His right to enforce obedience by personal chastisement had disappeared long before the adoption of the married women's acts. Even in Blackstone's day it was only the lower classes who still claimed and exercised 'their ancient privilege.' 1 Blk. Com. 445. For her refusal to perform there was no remedy. Notwithstanding this, the husband has always been entitled to recover from third persons whose wrongful acts rendered her less capable of performance. 'He retains the unmodified right to her conjugal society, even if her refusal to recognize this right affords him no ground for an absolute divorce, and he may recover damages for loss of consortium when caused by injuries to her person through the wrongs of others, as well as for criminal conversation.' Nolin v. Pearson, 191 Mass. 283, 286, 77 N. E. 890, 891, 4 L. R. A. (N. S.) 643, 114 Am. St. Rep. 605, 6 Ann. Cas. 658. * * *

"Her recovery is limited because of the fact that the loss of that *part of her capacity to earn money is not a damage to her*. As to that, she has lost nothing which was of value to her. 'If she is interfered with in her *business transactions*, and for that reason unable to earn what she otherwise would have earned, the damage is personal to her.' Normile v. Company, 57 W. Va. 132, 134, 49 S. E. 1030, 68 L. R. A. 901. But if she voluntarily performed services for her husband, the impairment of capacity 'was his loss, and not that of his wife.' Standen v. Railroad, 214 Pa. 189, 200, 63 A. 467, 6 Ann. Cas. 408. (Italics supplied.) * * *

"The general question has been examined and considered independently of the authorities in this jurisdiction. Historically, upon the authorities at large and upon principle, it seems to be well settled that the husband's action for negligent injury to the consortium was not dependent upon his proving loss of service, that any substantial injury to marital rights is actionable, that the husband still has a limited but yet substantial right to the wife's services, and that the application of the true rule of damages does not permit any double recovery."

558

In the case now before us there was, under the New Hampshire rule, no evidence to support a recovery for loss of time while trying to effect a cure. That loss is recoverable only in an action by the husband. Likewise, in view of the following statement by the New Hampshire court:

" * * * True it is that she might abandon her family duties and earn money, as in the supposed cases the father or the daughter might. But the evidence not warranting a finding that they would have done so but for the accident, there is no proof of loss resulting to any one of them on this account" —there would seem to be no evidence upon which to base an award for earning capacity with consideration being given to the time element of the future.

We are compelled, therefore, to the conclusion that under the New Hampshire rule that portion of the charge now considered was erroneous and presumptively prejudicial to the defendant. United States v. River Rouge Imp. Co., 269 U. S. 411, 421, 46 S. Ct. 144, 70 L. Ed. 339; Fillippon v. Albion Vein Slate Co., 250 U. S. 76, 82, 39 S. Ct. 435, 437, 63 L. Ed. 853.

In the latter case the court said:

"And of course in jury trials erroneous rulings are presumptively injurious, especially those embodied in instructions to the jury; and they furnish ground for reversal unless it affirmatively appears that they were harmless."

In view of the fact that this error involved the inclusion of the specific elements of damages which were not proper, we are unable to say that the error was harmless. Likewise, we are unable to accept the contention of plaintiff's counsel that the manner in which the exception was taken was too general to be of avail. Counsel for the defendant, at the time of interposing the exception, pointed out the specific portion of the charge and the particular elements of damage dealt with to which the exception was taken. We believe that this was a sufficiently definite specification of error.

In the case of Feuerstein v. Grady (N. H. 1933) 169 A. 622, 624, the court in part said:

"The error here complained of not being a slip of the tongue or inadvertence in speech, but being an erroneous statement of statutory law, an exception which directs the court's attention to the actual sentence in which the error of law is contained is a sufficiently definite specification of the error complained of. An exception which specifies the number of the request complained of is a sufficient exception to save the rights of the excepting party."

The judgment of the District Court is reversed and the cause is remanded to that court with direction that a new trial be granted limited to questions of damages only, without costs to either party.